UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James T. Burke,

        Plaintiff,

        v.

James Baker; Nicholas Deml, Commissioner;
State of Vermont; Ms. Johnson,

        Defendants.

Civil Action No. 5:21–cv–265–gwc-kjd

**ORDER AND REPORT AND RECOMMENDATION**
(Docs. 10, 18, 29, 37, 45, 49)

Plaintiff James T. Burke, a Vermont inmate incarcerated in Mississippi representing himself, has filed an action under 42 U.S.C. § 1983 against Defendant James Baker, the former Commissioner of the Vermont of Department of Corrections (DOC), in his individual and official[1] capacities, the State of Vermont, and Ms. Johnson, a Unit Manager at the correctional facility where Burke is incarcerated, in her individual and official capacities (collectively, "Defendants").

Plaintiff alleges violations of his constitutional rights stemming from his incarceration in Mississippi.  Specifically, he appears to allege constitutional violations based on (1) his transfer from Vermont to the Mississippi facility without his consent; (2) defendants' negligence resulting in his COVID-19 infection at the facility; (3) Defendants' indifference to his medical needs generally, including his COVID-19 infection and related effects, and his need for a bandage related to an ankle injury; (4) alleged exposure at the facility to crop-dusting chemicals used on

---

[1] Pursuant to Fed. R. Civ. P. 25(d), DOC Commissioner Nicholas Deml is automatically substituted for former Commissioner Baker in the official-capacity claims asserted against Baker.

neighboring farms; and (5) Defendant Johnson's alleged failure to respond in a timely manner to Plaintiff's requests to use the prison law library.  He seeks $2,000,000 in compensatory damages, $2,000,000 in punitive damages, and transfer back to Vermont.  (Docs. 5–6.)[2]

Defendants move to dismiss Plaintiff's Complaint on several grounds.  Defendants contend that Plaintiff has violated the "three strikes" rule under the Prison Litigation Reform Act (PLRA), which generally prohibits a prisoner from filing an action *in forma pauperis* (IFP) if he has had three or more previous lawsuits dismissed because they were frivolous, malicious, or failed to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  Citing this Court's dismissal of at least six of Plaintiff's previous lawsuits for failure to state a claim, Defendants urge the Court to dismiss the Complaint until Plaintiff pays the required filing fee. Defendants move to dismiss Plaintiff's Complaint on several additional grounds: (1) sovereign immunity bars the claims against the State of Vermont and Commissioner Deml in his official capacity; (2) the individual-capacity claims against Defendant Baker fail because the Complaint does not allege Baker's personal involvement in any of the alleged unconstitutional conduct; (3) personal jurisdiction is lacking over Defendant Johnson, a unit manager at the prison who lives and works in Mississippi; (4) Plaintiff fails to state a cognizable constitutional claim based on his transfer to the prison in Mississippi; (5) Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his conditions of confinement; (6) Plaintiff fails to state a claim that Defendants have denied him access to the courts; (7) Plaintiff fails to state a claim that

---

[2] Shortly after the filing of the Complaint, Plaintiff filed a Motion for Emergency Injunctive Relief requesting transfer to Vermont.  (Doc. 6.)  He withdrew this request on August 12, 2022.  (Doc. 44.)  The Motion to Withdraw specifically noted that he requested trial by jury in his case, but that it was now necessary for him to remain in Mississippi to assist other inmates with their Vermont DOC grievances and § 1983 claims, and apparently to prepare these inmates as witnesses at his trial in this case.  (*Id.*)  Therefore, although Plaintiff withdrew the request for transfer to Vermont in connection with the motion for injunctive relief, the Court concludes that he has also withdrawn the request for transfer in the Complaint given that the reason for withdrawing the transfer request is related to the jury trial demand in his Complaint.

Defendants are responsible for exposing him to crop-dusting chemicals allegedly used on neighboring farms; and (8) the Complaint should be dismissed because venue is not proper in the District of Vermont.  (Doc. 29.)

Also pending are Plaintiff's Motions for Sanctions Against Defendant Johnson (Docs. 10, 18), Plaintiff's Motion Pursuant to the Ex-Parte Young[ ] Exception (Doc. 37), Plaintiff's Motion for Extension to File a Second Opposition to Defendants' Motion to Dismiss (Doc. 45), and Defendants' Motion to Strike Sur-Reply (Doc. 49).

## Discussion

## I.   Plaintiff's Motion for Extension of Time to File a Second Opposition and Defendants' Motion to Strike Sur-Reply

Defendants filed their Motion to Dismiss Plaintiff's Complaint on May 13, 2022.  (Doc. 29.)  Plaintiff filed an Opposition to the Motion to Dismiss on June 6, 2022.  (Doc. 33.)  On August 26, 2022, Plaintiff filed a "Motion for a Thirty Day Extension of Time From [August 29, 2022] to File a Second Opposition to Defendants['] Motion to Dismiss Yet to be Filed."  (Doc. 45.)  Defendants filed a Reply in Support of the Motion to Dismiss on August 29, 2022 (Doc. 46), thus completing the briefing on the Motion to Dismiss.  Nevertheless, on September 16, 2022, Plaintiff filed an Opposition to Defendants' Reply (Doc. 47).  Defendants request that the Court strike Plaintiff's most recent filing (Doc. 47) because it is essentially an unauthorized sur-reply.  (Doc. 49.)

Defendants are correct that the court's Local Rules do not authorize sur-replies. Nevertheless, a court in its discretion may consider a sur-reply.  *See Newton v. City of New York*, 738 F. Supp. 2d 397, 417 (S.D.N.Y. 2010) ("Courts have broad discretion to consider arguments in a sur-reply.").  Given Plaintiff's self-represented status, and notwithstanding his frequent litigation in this District, the Court has considered Plaintiff's sur-reply.  Therefore, Defendants'

motion to strike the sur-reply (Doc. 49) is DENIED and Plaintiff's motion for an extension of

time to file a second opposition (Doc. 45) is GRANTED NUNC PRO TUNC.

## II.      Defendants' Motion to Dismiss

### A.      "Three Strikes" Rule Under the PLRA

Under the PLRA, 28 U.S.C. § 1915, a court may allow an inmate to file suit without

prepayment of fees if the inmate provides an affidavit demonstrating his inability to pay.  *See*

28 U.S.C. § 1915(a)(1).  When Plaintiff filed this action in November 2021, the Court granted his

application to proceed IFP, ordered the collection of the filing fee from his prison account, and

ordered the U.S. Marshals Service to serve the Complaint on Defendants.  When a prisoner-

litigant has a history of frivolous or non-meritorious lawsuits, the PLRA limits a prisoner's ability

to pursue subsequent civil litigation without payment of fees.  The statute provides:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner
> has, on 3 or more occasions, while incarcerated or detained in any facility, brought
> an action  . . . that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the prisoner is under
> imminent danger of physical injury.

28 U.S.C. § 1915(g).  In enacting the PLRA, Congress principally intended to deter frivolous

prisoner litigation.  *Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007).  Consequently, the PLRA

"established what has been known as the three-strikes rule," which "generally prevents a prisoner

from bringing suit [IFP]—that is, without first paying the filing fee—if he has had three or more

prior suits dismissed" on the grounds listed in § 1915(g).  *Lomax v. Ortiz-Marquez*, 140 S. Ct.

1721, 1723 (2020).  The three-strikes rule "refers to any dismissal for failure to state a claim,

whether with prejudice or without."  *Id.*

Plaintiff has brought several cases that arguably qualify as "strikes" under § 1915(g).

Defendants cite six such cases, *see* Doc. 29 at 3 n.2, and Plaintiff does not appear to dispute that

these cases trigger the filing limitations in § 1915(g).  Plaintiff relies on the exception for

"imminent danger of physical injury;" namely, the alleged risks associated with the crop-dusting chemicals used near Tallahatchie County Correctional Facility (TCCF) and "the medically documented injuries" attributed to Plaintiff's COVID-19 infection.  (Doc. 33 at 3.)  Although past injuries are not sufficient to establish imminent danger, *see Malik v. McGinnis*, 293 F.3d 559, 562–63 (2d Cir. 2002) ("[T]he danger must exist at the time the complaint is filed"), Plaintiff alleges that he suffers from "post-covid-syndrom[e]," that he may contract COVID-19 again, and that herbicides allegedly used on neighboring farms "cause[] [P]arkinson's brain disease."  (Doc. 5 at 10.)

An allegation of potential exposure to the COVID-19 virus is sufficient to allege "imminent danger of physical injury."  *See McFadden v. Morley*, 21-459, 2021 WL 3783102, at *1 (2d Cir. Aug. 10, 2021).  In *McFadden*, the district court denied plaintiff's request to proceed IFP, concluding that he had "not sufficiently alleged that he is in imminent danger of serious physical injury due to the possibility of contracting COVID-19 at [the correctional facility] and the potential for increased symptoms caused by his underlying conditions." *McFadden v. Morley*, 20-CV-06934 FPG, 2021 WL 775832, at *1 (W.D.N.Y. Feb. 5, 2021).  McFadden asserted that the DOC defendants "failed to provide adequate protection from contracting COVID-19 and have not enforced the safety measures in place."  *Id*. at *2.  He further alleged that he was 68 years old and suffered from underlying health conditions, including heart disease and high blood pressure.  *Id*.  In finding plaintiff's claim of imminent danger of serious physical injury too speculative, the district court observed that "plaintiff does not allege that he contracted COVID-19 or even that he has been in direct contact with anyone who has tested positive."  *Id*. at *3.  The Second Circuit vacated the order denying IFP, holding that McFadden's allegations were "sufficient to satisfy the 'imminent danger of serious physical injury' exception to the three-strikes provision of 28 U.S.C. § 1915(g)."  *McFadden*, 2021 WL 3783102, at *1.

In this case, Plaintiff alleges that he tested positive for COVID-19 in July 2020 and attaches a laboratory report that appears to confirm his claim.  (Doc 5 at 4; Doc. 5-1.)  Under the required liberal construction of the Complaint, he further claims that lingering effects of the COVID-19 infection continue to impact his health, and that the alleged conditions at the prison continue to place him at risk of further adverse health effects.  This is sufficient to satisfy the "imminent danger of serious physical injury" exception.

Therefore, I recommend that the Complaint not be dismissed under the "three strikes" provision of 28 U.S.C. § 1915(g).

**B.      Sovereign immunity bars Plaintiff's claims for monetary damages against the State of Vermont and Commissioner Deml in his official capacity.**

Defendants contend that all claims against the State of Vermont and Commissioner Deml in his official capacity are barred by sovereign immunity.  "[B]ecause sovereign immunity is 'jurisdictional in nature,' questions of sovereign immunity implicate a court's subject matter jurisdiction and are analyzed under Rule 12(b)(1)."  *Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014) (citing *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)).

A case is properly dismissed for lack of subject matter jurisdiction "if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks omitted).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Under § 1983, a claimant may bring suit against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

In order to assert a claim under § 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (omission in original) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Section 1983 provides a statutory remedy for violations of the federal Constitution and other federal laws.  *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (stating the statute is "not itself a source of substantive rights" but rather "provides a method for vindicating federal rights elsewhere conferred").  The statute occupies a position of "primacy . . . in providing [a] basis for securing redress for constitutional violations."  *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981).

The Supreme Court has interpreted the Eleventh Amendment to bar private suits for retrospective relief against a state in federal court, absent consent to suit by the state or valid congressional abrogation of this immunity.  *See Alden v. Maine*, 527 U.S. 706, 754 (1999) ("Our sovereign immunity precedents establish that suits against nonconsenting States are not properly susceptible of litigation in courts, and, as a result, that the entire judicial power granted by the Constitution does not embrace authority to entertain such suits in the absence of the State's consent . . . ." (cleaned up)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A]n unconsenting State is immune from suits brought in federal courts by her own

citizens as well as by citizens of another state." (internal quotation marks omitted)); *Hans v. Louisiana*, 134 U.S. 1, 17 (1890) ("Undoubtedly a state may be sued by its own consent . . . .").

Similarly, suits against a state actor in his or her official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent," and "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State. . . . [T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state officers sued in their official capacities are not "persons" subject to suit under § 1983).

Neither waiver nor abrogation applies in a § 1983 claim against a state official in federal court. *See* 12 V.S.A. § 5601(g) (establishing Vermont has not waived its sovereign immunity); *Will*, 491 U.S. at 67 (holding that in enacting § 1983, Congress did not abrogate state sovereign immunity under the Eleventh Amendment).[3]  Accordingly, Plaintiff cannot assert claims for monetary damages against either the State of Vermont or a state employee in his official capacity in federal court. *See Rivera v. Lempke*, 810 F. Supp. 2d 572, 574 (W.D.N.Y. 2011) ("Claims for damages against state employees in their official capacities are deemed claims against the state

---

[3] Plaintiff asserts that he requested that Defendants waive sovereign immunity. *See* Doc. 5-2.  He contends that Defendants have waived sovereign immunity because they did not respond to his request.  (Doc. 33 at 5.) Plaintiff does not cite any legal authority for this theory of waiver of sovereign immunity.  Given the well-settled principles that § 1983 did not abrogate state sovereign immunity, and that states are generally immune from suit absent their consent, an alleged failure by the state defendants to respond to the Plaintiff's request for waiver of sovereign immunity is an inadequate basis to find such a waiver.  *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.").

itself, and are barred by the Eleventh Amendment."); *see also McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (noting a court may raise sua sponte state sovereign immunity as a bar to federal subject matter jurisdiction).  Therefore, Plaintiff's claims against the State of Vermont and Commissioner Deml in his official capacity should be dismissed on grounds of sovereign immunity.

Plaintiff invokes *Ex Parte Young*, 209 U.S. 123 (1908) to argue that sovereign immunity does not bar his claims for prospective relief against the State of Vermont and Commissioner Deml in his official capacity.  (Doc. 37 at 1.)  Plaintiff is correct that *Ex Parte Young* is an exception to the sovereign immunity principle, but the exception generally applies when a plaintiff seeks prospective injunctive relief against a state officer acting in his or her official capacity.  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).  As Plaintiff seeks only monetary damages—and no longer seeks transfer back to Vermont— sovereign immunity bars the claims against the State of Vermont and Commissioner Deml in his official capacity and the claims should be dismissed.[4]

Therefore, I recommend that "Plaintiff's Motion Pursuant to the Ex-Parte Young[] Exception" (Doc. 37) be DENIED.

**C.**     **Plaintiff's claims against former Commissioner Baker in his individual capacity should be dismissed.**

Defendants contend that the claims against former Commissioner Baker in his individual capacity should be dismissed because Plaintiff fails to allege that Baker was personally involved in any of the conduct alleged in the Complaint.  (Doc. 29 at 6.)

---

[4] Plaintiff asserts a new claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) in his Opposition to the Motion to Dismiss.  (Doc. 33 at 8.)  However, this Report and Recommendation does not consider this claim as it was raised for the first time in an opposition brief and not pleaded in the Complaint.  *See Neisner v. Town of Killington*, No. 1:16-cv-4-jgm, 2016 WL 7441637, at *2 (D. Vt. Dec. 27, 2016) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). A litigant can only plead that an official committed a constitutional deprivation "through the official's own individual actions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even if the violation is alleged against a supervisory official, that "violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official who is directly involved "includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014); *see also Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff proceeding under § 1983 must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation); *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (holding that a § 1983 claim that fails to allege the personal involvement of the defendant fails as a matter of law).

Plaintiff alleges no facts demonstrating that former Commissioner Baker was personally involved in any of the allegedly unconstitutional conduct.[5] In fact, Defendant Baker's name only appears in the caption and in a summary list of Defendants in the Complaint (Doc. 5 at 1); his name does not appear in any of the allegations in the Complaint. A § 1983 claim that does not

---

[5] In his opposition to the Motion to Dismiss, Plaintiff asserts new allegations in an effort to show Baker's personal involvement in the alleged unconstitutional conduct. (Doc. 33 at 5–6) (alleging personal involvement through, among other actions, approving and overseeing contracts and policies, and "having Plaintiff at [the Mississippi prison] in the first place without first noticing the crop-dusting [planes]"). Assertions in opposition papers, however, are insufficient to amend the allegations in the Complaint. *See Neisner*, 2016 WL 7441637, at *2. Furthermore, Plaintiff's claim that Commissioner Baker both approved Vermont DOC contracts with out-of-state facilities and DOC policies at the Mississippi facility is insufficient to establish that Baker personally participated in the alleged deprivation of Plaintiff's constitutional rights. *See Richardson v. Dep't of Correction*, No. 10 Civ. 6137, 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011) ("The conclusory allegations of [the DOC Commissioner's] implementation of [prison rules] is insufficient to establish his personal involvement in any allegedly unconstitutional custom or policy.").

allege the personal involvement of the defendant fails as a matter of law.  S*ee Terry v. N.Y. City Dep't of Corr.*, No. 10 Civ. 6197, 2012 WL 718555, at *2 (S.D.N.Y. Mar. 6, 2012) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint" should be granted.).

As the Complaint fails to allege the personal involvement of Defendant Baker in any of the alleged constitutional violations, I recommend that Plaintiff's claims against Defendant Baker in his individual capacity be dismissed.

### D.    Plaintiff's claims against Defendant Johnson should be dismissed for lack of personal jurisdiction.

Defendants assert that personal jurisdiction is lacking over Defendant Johnson, a CoreCivic unit manager at TCCF residing in Mississippi.  (Doc. 29 at 8–10.)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  However, a "plaintiff need make only a prima facie showing that jurisdiction exists."  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).  The Court may consider evidence outside the Complaint to determine whether the exercise of personal jurisdiction is proper.  *See Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019).[6]  However, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted).  The Court will not draw "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist*

---

[6] Defendants' Motion to Dismiss attaches the sworn Declaration of Defendant Johnson, which the Court considers in its analysis of personal jurisdiction.  *See* Doc. 29-1.

*Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

"Conclusory non-fact-specific jurisdictional allegations or legal conclusion[s] couched as . . .

factual allegation[s] will not establish a prima facie showing of jurisdiction." *DeLorenzo v.*

*Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (second alteration in original)

(internal quotation marks omitted).

To exercise personal jurisdiction over a defendant, the Court must find the following:

(1) "the plaintiff's service of process upon the defendant must have been procedurally proper";

(2) "there must be a statutory basis for personal jurisdiction that renders such service of process

effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due

process principles." *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 197 (S.D.N.Y.

2018) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)).  In

general, "[a] district court's personal jurisdiction is determined by the law of the state in which

the court is located."  *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).

Under Vermont's long-arm statute, 12 V.S.A. § 913(b), a court may exercise personal

jurisdiction over a nonresident defendant "to the full extent permitted by the . . . Due Process

Clause" of the Fourteenth Amendment.  *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt.

342, 349, 142 A.3d 215, 220 (internal quotation marks omitted).  As a result, "the first part of

[the] inquiry—the interpretation of the Vermont law governing service of process—merges with

the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over

the defendant satisfies the requirements of due process."  *Metro. Life Ins. Co.*, 84 F.3d at 567.

This "analysis consist[s] of two components: the minimum contacts test and the reasonableness

inquiry."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.

2002) (internal quotation marks omitted); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386

(Vt. 1990).

Under the Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "The constitutional minimum contacts inquiry for personal jurisdiction requires [the Court] to distinguish between two forms of jurisdiction," general and specific. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008).

### 1.    The Court may not exercise general jurisdiction over Defendant Johnson.

A court asserting "general jurisdiction" over a defendant is permitted to "hear any and all claims against" that defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction arises where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [her] essentially at home in the forum State." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in an "exceptional case" will an individual's contacts with a forum "be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, but the Second Circuit has yet to find such a case." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017).

Johnson is not domiciled or otherwise "at home" in Vermont. The Complaint contains no allegations that Johnson ever had any contact with the State of Vermont. In addition, Johnson's Declaration confirms that she lives and works in Mississippi, does not own property in Vermont, and has never been to Vermont. (*See* Doc. 29-1 at 3, ¶¶ 8–9.) She further avers that she is not a

Vermont DOC employee and is not under the supervision of Vermont DOC in the performance of her duties in Mississippi.  (*Id*. ¶ 7.)

Therefore, Defendant Johnson is not subject to general jurisdiction in Vermont.

**2.      The Court may not exercise specific jurisdiction over Defendant Johnson.**

Specific jurisdiction over a nonresident defendant arises "when the cause of action sued upon arises out of the defendant's activities in a state."  *Brown*, 814 F.3d at 624.  The minimum-contacts inquiry for specific jurisdiction is satisfied if (1) "the defendant has 'purposefully directed' his activities at residents of the forum" or "purposefully availed itself of the privilege of doing business in the forum," and (2) "the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150, 151 (2d Cir. 2019).  To meet the minimum-contacts requirement, "the defendant's suit-related conduct must create a substantial connection with the forum State," not simply with persons who reside there.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see id.* at 283–84 ("The inquiry . . . focuses on the relationship among the defendant, the forum, and the litigation.").  As such, "mere injury to a forum resident" is insufficient.  *Id.* at 278.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017).

Plaintiff alleges that Defendant Johnson is a Unit Manager at TCCF in Mississippi and engages in "interstate commerce" with Vermont and Vermont DOC by virtue of her employment with CoreCivic.  (Doc. 33 at 6.)  CoreCivic's contract with the Vermont DOC, however, does not confer specific jurisdiction over Johnson.  *See Dumont v. Corr. Corp. of Am.*, No. 2:14-cv-209, 2015 WL 3791407, at *5 (D. Vt. June 17, 2015) ("[J]ust because [Corrections Corporation of America] might be subject to personal jurisdiction in Vermont by contracting with the Vermont

DOC does not mean that [Corrections Corporation of America]'s employees and managers are necessarily also subject to jurisdiction here.").  Plaintiff's allegations concerning Defendant Johnson all arise from his incarceration at TCCF in Mississippi.  His alleged causes of action against Johnson relate exclusively to her work at the Mississippi prison; specifically, her alleged actions related to law library access; her alleged conduct related to his conditions of confinement and health needs at the facility; and her alleged negligence as a member of CoreCivic staff pertaining to neighboring farmers' use of harmful chemicals to the detriment of Plaintiff and other inmates.

Because Plaintiff fails to allege that any suit-related conduct of Defendant Johnson was substantially connected to Vermont, she is not subject to specific jurisdiction in Vermont. *See Walden*, 571 U.S. at 284.  Further, Johnson attests that she has had no purposeful contact, let alone minimum contacts, with the state of Vermont.  (*See* Doc. 29-1 at 3, ¶¶ 6–9.)  As Plaintiff has not shown that Defendant Johnson has the requisite minimum contacts with Vermont, "the [personal jurisdiction] inquiry ends," and the Court need not evaluate the reasonableness prong of the due process analysis.  *See Metro. Life Ins. Co.*, 84 F.3d at 568.[7]

Accordingly, I recommend that the Court dismiss the claims against Defendant Johnson for lack of personal jurisdiction.[8]

---

[7] Plaintiff also appears to claim that his assertion of an Eighth Amendment violation against Defendant Johnson renders her subject to personal jurisdiction.  (Doc. 33 at 6.)  This argument is not persuasive, as subject matter jurisdiction over a lawsuit does not establish personal jurisdiction over a particular defendant in the lawsuit. *See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997) ("As a general matter in the federal judicial system, the concepts of subject matter jurisdiction, personal jurisdiction, and venue address different concerns limiting the authority of a court to entertain a given case.").

[8] To the extent Plaintiff asserts claims against Defendant Johnson in her official capacity (Doc. 5 at 1–2), such claims are properly brought against her employer CoreCivic, which is not a defendant in this action.  *See Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359, 359 n.1 (W.D.N.Y 2012) ("An official capacity claim against an employee of a private corporation is viewed as a claim against the corporate entity itself.").

E.     **Defendants' Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) for Failure to State a Claim**

Defendants next assert that Plaintiff has failed to state claims upon which relief can be granted with respect to the following alleged causes of action: (1) that Plaintiff's transfer to the correctional facility in Mississippi violates his Eighth Amendment rights; (2) that Defendants negligently caused him to become infected with COVID-19; (3) that Defendants were deliberately indifferent to his medical needs related to COVID-19 symptoms and an ankle injury; (4) that Defendant Johnson violated his First Amendment rights by failing to timely respond to his requests to use the law library; and (5) that CoreCivic staff were negligent in allowing farmers near the correctional facility to use a carcinogenic pesticide in their fields.  The Court addresses each of these claims below.[9]

In order to withstand a motion to dismiss under Rule 12(b)(6), the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a plaintiff is not required to present detailed allegations, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A complaint does not meet the facial plausibility standard if it includes only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although the court must interpret a

---

[9] Should this Report and Recommendation be adopted for the reasons stated in Part II(B)–(D), then the named defendants—State of Vermont, former Commissioner James Baker in his individual and official capacities, and Ms. Johnson in her individual and official capacities—will be dismissed from the case.  It would then be unnecessary for the Court to address Defendants' alternative arguments that Plaintiff's Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As it is recommended that Plaintiff be permitted an opportunity to amend his Complaint, this Report and Recommendation addresses Defendants' Rule 12(b)(6) arguments in order to advise Plaintiff of the legal and factual deficiencies in the present Complaint.

*pro se* complaint liberally, the complaint nevertheless must include sufficient factual allegations

to satisfy the facial plausibility standard.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

      For the reasons explained below, Plaintiff's Complaint should be dismissed for failure to

state a claim upon which relief can be granted.

> **1.     Plaintiff has not stated a constitutional claim based on his transfer
> from Vermont to TCCF in Mississippi.**

      Plaintiff alleges that Defendants have violated his Eighth Amendment rights by

transferring him from Vermont to Mississippi without his consent to serve his sentence in a

location "far away from his [Massachusetts] place of birth."  (Doc. 5 at 2–3.)

      A prisoner does not have a constitutional right to be incarcerated in a particular institution.

*See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  "Just as an inmate has no justifiable

expectation that he will be incarcerated in any particular prison within a State, he has no

justifiable expectation that he will be incarcerated in any particular State."  *Olim v. Wakinekona*,

461 U.S. 238, 245–46 (1983), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472

(1995).  Recognizing that "[c]orrections compacts between States, implemented by statutes,

authorize incarceration of a prisoner of one State in another State's prison," the Supreme Court

has observed that "it is neither unreasonable nor unusual for an inmate to serve practically his

entire sentence in a State other than the one in which he was convicted and sentenced."  *Id*. at 247

(explaining that "[e]ven when . . . the transfer involves long distances and an ocean crossing, the

confinement remains within constitutional limits"); *see also Smith v. Mulgrave*, Civil Action No.

2015-0078, 2020 WL 412267, at *5 (D.V.I. Jan. 24, 2020) (noting that "inmate transfers to

facilities far from their homes do not constitute cruel and unusual punishment in violation of the

Eighth Amendment to the Constitution").

Plaintiff has not stated a cognizable constitutional claim based on his transfer to serve his sentence in Mississippi.

> **2.      Plaintiff has not stated an Eighth Amendment claim based on allegations that defendants negligently caused him to become infected with COVID-19.**

Plaintiff alleges that CoreCivic employees "allowed themselves to be infected with COVID-19" outside of work and then "negligently" transported the virus into the correctional facility where Plaintiff and others became infected.  (Doc. 5 at 3–4, ¶¶ 5–6.)  Plaintiff further asserts that "Core Civic staff" failed "to require other Vermont inmates to be vaccinated in close living conditions of confinement."  (*Id.* at 8, ¶ 28.)  Finally, Plaintiff appears to allege that due to Vermont DOC's inadequate policies, TCCF had insufficient policies and procedures to address COVID-19 in the facility.  (*Id*. at 4, ¶ 8.)

Although Plaintiff broadly states that his claims arise under the First, Fifth, Eighth, and Fourteenth Amendments, the Court interprets Plaintiff's claim to arise under the Eighth Amendment.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (holding that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims") (internal quotation marks omitted).  As the Eighth Amendment extends protection against deliberate indifference to a sentenced prisoner's safety, health, and medical treatment needs, the Court analyzes Plaintiff's claim that Defendants caused him to become infected with COVID-19 under the Eighth Amendment.

In order to state a claim under the Eighth Amendment for deliberate indifference based on unconstitutional conditions of confinement, a plaintiff must plead sufficient facts to satisfy the objective and subjective elements of the claim.  Under the objective element, the plaintiff must allege that he was incarcerated under conditions posing a substantial risk of serious harm.  *See*

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  The subjective element requires that "the charged official must act with a sufficiently culpable state of mind."  *Id.*  "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."  *Id*.  "[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*.; *see also Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (subjective element requires allegation that defendant knew that there was a "substantial risk" to plaintiff's health and "disregard[ed] that risk by failing to take reasonable measures to abate it").

Courts have recognized that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus."  *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020).  Plaintiff's Complaint, however, does not plead sufficient facts to meet the objective element of a deliberate-indifference claim.  He alleges that CCA/CoreCivic employed workers who on off days traveled to "superspreader events," "allowed themselves to be infected with COVID-19," and then "negligently . . . transported their personal COVID-19 virus" into the "Vermont inmate population."  (Doc. 5 at 3–4, ¶ 5.)  Plaintiff further alleges that Vermont DOC's "negligent policies" permitted facility staff to be "grossly negligent with their inadequate/invisible COVID-19 non-polic[ies] and [COVID-19] procedure[s]."  (*Id*. at 4, ¶ 8.)  Plaintiff alleges that he tested positive for COVID-19 in July 2020, but he speculates that his apparent exposure to the virus resulted from off-duty conduct by facility staff.  Nor does he specify the allegedly inadequate policies at the facility that placed him at a substantial risk of serious harm.  Plaintiff generally alleges only that CoreCivic staff "were/are . . . grossly negligent in that they all failed to require

other Vermont inmates to be vaccinated in close living conditions of confinement" and that staff

did not adequately separate vaccinated and unvaccinated inmates.  (*Id*. at 8, ¶ 28.)  Plaintiff's

conclusory allegations are insufficient to demonstrate a substantial risk of serious harm.[10]

Even assuming that Plaintiff has sufficiently alleged that he was incarcerated under

conditions posing a substantial risk of serious harm, he has not alleged that any of the named

defendants knew of and disregarded an excessive risk to his health.  Plaintiff generally alleges

that as a result of Vermont DOC's negligent policies, "CCA/CoreCivic Staff" in turn were

"allowed" to be negligent with their COVID-19 policies and procedures.  (*Id.* at 4, ¶ 8.)

CCA/CoreCivic is not a defendant in this lawsuit.  There are no factual allegations that

Commissioner Baker or Defendant Johnson were aware of an excessive risk to Plaintiff's health

and disregarded it.  As respondeat superior liability is unavailable under § 1983, without any

allegations that the named Defendants were personally involved in the allegedly unconstitutional

conduct, Plaintiff's Eighth Amendment conditions-of-confinement claim should be dismissed.

### 3.  Plaintiff has not stated a claim that defendants were deliberately indifferent to his medical needs related to COVID-19 symptoms and an ankle injury.

Plaintiff also appears to assert an Eighth Amendment claim for deliberate indifference to

his medical needs with respect to treatment of COVID-19 symptoms and provision of an ACE

bandage for an ankle injury.  (Doc. 5 at 4–5, ¶¶ 8–9.)

The Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a

substitute for state tort law," as "not every lapse in prison medical care will rise to the level of a

constitutional violation."  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Similar to the

---

[10] Plaintiff alleges no facts to substantiate the claim that the prison could have compelled inmates to receive the COVID-19 vaccine, or that the prison's COVID-19 protocols caused the vaccinated and the unvaccinated to be housed in a manner contrary to the health of the prison population.

elements of a conditions-of-confinement claim, the failure to adequately treat a prisoner's

medical condition may constitute cruel and unusual punishment in violation of the Eighth

Amendment only where a defendant acts with "deliberate indifference to [the prisoner's] serious

medical needs." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference has two necessary components, one

objective and the other subjective." *Cole v. Fischer*, 416 F. App'x 111, 113 (2d Cir. 2011).

With respect to the objective component, the alleged medical condition or deprivation of

adequate medical care must be, "in objective terms, 'sufficiently serious.'" *Chance v. Armstrong*,

143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

Plaintiff's claims regarding the allegedly inadequate medical care at the facility are wholly

conclusory and provide no factual substantiation. The Complaint faults "Vermont DOC" and

"Core/Civic Staff" for Plaintiff's COVID-19 infection and related health effects, but does not

provide any facts to support the claim:

> As a direct result of Vermont D.O.C. Staff's inadequate[e]ly-negligent polic[ies]
> and out of State procedure(s) and incorrect training with no correct training in
> conjunction with CORE-CIVIC-T.C.C.F., [Mississippi] Staff, said staff were
> allowed by Defendant[s] to act grossly negligent with their inadequate/invisible
> COVID-19 non-polic[ies] and CORONA-VIRUS procedure[s] . . . and grossly
> COVID-19 negligent together with any and all medical needs or treatment out of
> State incarceration failed to provide or provided to both Plaintiff and or the other
> 300 or so Vermont inmates.

(Doc. 5 at 4, ¶ 8.) Plaintiff then alleges that these unspecified failings in policy and procedure

were the cause of his COVID-19 symptoms and his alleged failure to receive an ACE bandage for

his ankle, but again he does not provide supporting facts to permit the causative connection to be

drawn:

> As a direct result of Defendant's gross-negligence [and] medical malpractice
> pursuant to practice-/caring for Plaintiff's health needs and then failing to even
> provide [Mississippi] or in State medical care for something as small as a[n] ankle
> ACE-Bandage for Plaintiff's operated on left ankle . . . , Plaintiff suffered from and

still suffers from COVID-19's lingering COVID-INFECTION(S) [and] symptoms
and or post-covid-syndrom[e].

(*Id.* at 5, ¶ 9.)

Even assuming that Plaintiff adequately alleges a sufficiently serious medical condition,
under the subjective prong of the analysis Plaintiff must also prove that the defendant "knew of
and disregarded the plaintiff's serious medical needs." *Chance*, 143 F.3d at 703 (citing *Farmer*,
511 U.S. at 837). Deliberate indifference occurs when an official "knows that [an] inmate[]
face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable
measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff alleges that he contracted COVID-19 (attaching a report documenting his
positive test result) and further describes lingering effects of COVID-19. He does not allege
facts, however, showing that the medical care he received was constitutionally inadequate, or that
specific individuals are responsible for the allegedly inadequate care. Nor does Plaintiff's
Complaint allege facts demonstrating that any of the named Defendants personally participated in
the allegedly inadequate medical care. He only generally alleges that unspecified State of
Vermont policies resulted in "gross negligence" by TCCF staff with respect to the facility's
COVID-19 policies and procedures. (Doc. 5 at 4, ¶ 8.) Plaintiff appears to suggest that
Defendant Johnson is responsible for violating his rights under the Fifth, Eighth, and Fourteenth
Amendments regarding the "health and welfare of Vermont inmates," but he does not include
specific allegations as to what Defendant Johnson did or failed to do that adversely affected his
health.

Therefore, the Complaint fails to state a claim for deliberate indifference to his medical
needs.

**4.    Plaintiff has not stated a claim that Defendant Johnson violated his First Amendment rights by failing to timely respond to his requests to use the law library.**

Plaintiff alleges that TCCF Unit Manager Johnson violated his First Amendment right to access the courts by "failing to timely respond" to requests to use the TCCF law library.  He also appears to claim that Defendant Johnson violated his First Amendment rights by requiring him to complete forms for use of the prison library in a timely manner and in accordance with TCCF procedure.  (Doc. 5 at 6, ¶ 11.)

It is well-established that prisoners have "a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries."  *Id*. at 828.  "But the Supreme Court has likewise instructed that '*Bounds* did not create an abstract, freestanding right to a law library or legal assistance.'"  *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Oliver v. Head Sheriff of Dep't & Div. of Corr. Of Nassau County*, 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008) (observing that "the Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner").

Rather "[t]he right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*."  *Bourdon*, 386 F.3d at 93 (alteration in original) (quoting *Lewis*, 518 U.S. at 350).  A prisoner does not have a constitutional right to access the prison law library, but he may establish a violation of his right to access the courts if he demonstrates "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Id*.  An access-to-courts claim requires that the plaintiff allege: "(1) a valid underlying cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the

litigation caused by the defendant's actions." *Fusco v. Westchester County Dep't of Corrections*, 21-CV-1943 (CM), 2021 WL 1254215, at *3 (S.D.N.Y. Apr. 1, 2021) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Fredricks v. Parilla*, 21-CV-1893, 2021 WL 2227095, at *2 (S.D.N.Y. June 1, 2021) (requiring that plaintiff demonstrate the defendant's conduct was "deliberate and malicious"). "[D]elay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Fusco*, 2021 WL 1254215, at 3 (internal quotation marks omitted).

In this case, Plaintiff has not pleaded facts indicating that he has been unconstitutionally denied his right to access the courts. He does not allege that the claimed limits on his allotted law library time actually hindered his attempt to pursue a legal claim. The Complaint asserts only dissatisfaction with (1) the timeliness of responses to his library requests, and (2) the apparent prison requirement that he fill out law library forms correctly and in advance of the requested time of use. (Doc. 5 at 6, ¶ 11.) He has not alleged that the prison's procedures for law library access frustrated his efforts to pursue legal claims in court. Courts have dismissed access-to-courts claims where the plaintiff "does not allege which specific, nonfrivolous legal challenges were affected by [the plaintiff's] inability to access [the law library system]; which particular deadlines, if any, he missed due to such actions; or what specific documents, such as motions or pleadings, he was prevented from filing." *Washington v. Falco*, 20 CV 3009, 2021 WL 797658, at *8 (S.D.N.Y. Mar. 1, 2021).[11]

---

[11] Plaintiff attaches to his Complaint several exhibits that document some of his communications with officials regarding his requests to access the law library. He appears to have attached these exhibits to demonstrate exhaustion of administrative remedies for the claims asserted in his Complaint. Although some of these exhibits state that Johnson has not responded to his requests for law library access (and that he has a pending court case), they do not assert that Plaintiff has incurred actual injury in the litigation of his case. The attached exhibits also reflect that Plaintiff received a response acknowledging receipt of his library request. *See* Doc. 5-9 at 1 (April 7, 2021 response stating that "[t]he library access will be scheduled according[ly]. You have submitted the proper forms so be patient").

Plaintiff has not alleged any facts demonstrating the impact of the allegedly unlawful library procedures, such as missed deadlines or inability to file court documents.  In sum, Plaintiff has not alleged any facts demonstrating that he suffered an actual injury in litigating his pending PCR case in state court due to the alleged lack of access to the prison law library.  Therefore, Plaintiff's access-to-the-courts claim should be dismissed.

> **5.   Plaintiff has not stated a claim that "CoreCivic staff" were negligent in allowing farmers near the correctional facility to use a carcinogenic pesticide in their fields.**

Plaintiff's allegations with respect to this claim are as follows:

> "CORE-CIVIC Staff were additionall[y] grossly negligent with my health and mental well-being in that they allowed the cotton growing farmers who had cotton field(s) surrounding the area of T.C.C.F., [Mississippi] building(s) and open yard(s), windows and vent(s) on the roof of the housing units, said Defendant(s) allowed said Tutwiler, [Mississippi] farmers to crop-dust with a plain, chemical-cancer-causing-pesticide-n[euro]-toxins were allowed to be sprayed from the air and upon the surrounding cotton fields and also upon me . . . who had to breath said toxins while recovering from said CORONA-VIRUS chest-infections that [prison] Staff had originally infected Plaintiff with the deadly COVID-19 chest infection(s) pursuant to the virus.

(Doc. 5 at 9, ¶ 29.)  Plaintiff alleges no facts implicating the State of Vermont, Commissioner Baker, or Ms. Johnson in the allegedly harmful conduct.  He alleges only that "Core Civic Staff" are responsible for the conduct.  Plaintiff offers no factual allegations demonstrating that Defendants have any control over the neighboring cotton fields or any involvement with the alleged crop-dusting by neighboring farmers.

As this claim contains no plausible factual allegations that Defendants were personally involved in allegedly harmful conduct by third-parties apparently unaffiliated with the prison, Plaintiff fails to state a claim.

### F.    Plaintiff's Motions for Sanctions Against Defendant Johnson

Plaintiff has filed two motions seeking sanctions against Defendant Johnson.  In the first motion, Plaintiff alleges that after Johnson received a copy of Plaintiff's current lawsuit, she directed other CoreCivic staff "to stop making any further copies of Plaintiff's Pro-se litigation legal work papers."  (Doc. 10.)  He contends that such alleged conduct has infringed his First Amendment right to access the courts.  (*Id.*)  In his second motion, Plaintiff alleges that Johnson continues to instruct staff not to make copies of legal documents in this litigation.  (Doc. 18.)  He requests monetary sanctions against Johnson "or transfer out of TCCF."  (*Id.*)

As this Report and Recommendation recommends that personal jurisdiction is lacking over Defendant Johnson, and that Plaintiff has failed to state claims against her, Johnson is not properly before the Court with respect to Plaintiff's demands for sanctions.  Therefore, I recommend that Plaintiff's motions for sanctions against Defendant Johnson (Docs. 10, 18) be DENIED.

### G.    Defendants' Motion to Dismiss Based on Improper Venue

Defendants further assert that Plaintiff's Complaint should be dismissed for improper venue.  The venue statute provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  If it is determined that venue is not proper in any of the judicial districts under § 1391(b), the court must either dismiss the case or transfer the case to another district.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Venue is not proper in this District under § 1391(b)(1) because not all of the defendants reside here.  Venue is also not available under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claims" occurred in Mississippi, not Vermont.  Finally, venue is not proper in this District under § 1391(b)(3) because this lawsuit arises out of Plaintiff's confinement in Mississippi and therefore the action may be brought in the Northern District of Mississippi.

This Report and Recommendation recommends that the Complaint be dismissed in its entirety for failure to state a claim and on jurisdictional grounds.  Therefore, it would not be in the interests of justice to transfer this case to the Northern District of Mississippi at this time.

### H.    Leave to Amend

The Second Circuit has cautioned that the court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile."  *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (internal quotation marks omitted).  "Amendment is futile where the problems with the complaint's claims are substantive and not the result of inartful pleading."  *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020) (internal quotation marks and alterations omitted).

It would be futile to attempt to restate claims against the State of Vermont, Commissioner Deml, and Ms. Johnson because the Court cannot exercise jurisdiction over them.  Further, although it is not clear that Plaintiff can state a viable federal claim against former Commissioner Baker, "[the Second] Circuit's precedent encourages giving [him] another opportunity."  *Montpelier v. Green Mountain Care*, No. 2:19-cv-84, 2019 WL 5102715, at *3 (D. Vt. Oct. 11,

2019).  Accordingly, I recommend that the Court grant Plaintiff leave to amend his Complaint.

Plaintiff is advised, however, that "courts in this Circuit have routinely dismissed claims in

amended complaints where the court granted leave to amend for a limited purpose and the

plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm*

*Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012).  Additionally,

should his Amended Complaint fail to allege imminent danger of serious physical injury "fairly

traceable to unlawful conduct" of former Commissioner Baker, *see Pettus v. Morgenthau*,

554 F.3d 293, 299 (2d Cir. 2009), Plaintiff will be required to pay the required filing fee at the

time of filing the Amended Complaint.

Plaintiff is advised that an Amended Complaint, if filed, will supersede and completely

replace the original Complaint.  *Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018)

("[I]t is well settled that an amended pleading ordinarily supersedes the original and renders it of

no legal effect . . . ." (internal quotation marks omitted)).  Accordingly, an Amended Complaint,

if filed, must include all of Plaintiff's factual allegations in their entirety and must set forth all the

claims he has against all defendants and all the relief he seeks; reference back to the original

Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District

of Vermont.  *See* Fed. R. Civ. P. 8(a); L.R. 15(b).  Equally important, an Amended Complaint

must comport with the Federal Rules of Civil Procedure, including setting forth short and plain

statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required

by Rule 10.

## Conclusion

For the reasons explained above, Plaintiff's Motion for Extension of Time to File Second

Opposition (Doc. 45) is GRANTED nunc pro tunc, and Defendants' Motion to Strike Sur-Reply

to Motion (Doc. 49) is DENIED.  I recommend that Defendants' Motion to Dismiss (Doc. 29) be

GRANTED.  I further recommend that Plaintiff be permitted to file an Amended Complaint as to his claims against former Commissioner Baker within thirty days of the Court's order with respect to this Report and Recommendation.  I further recommend that "Plaintiff's Motion Pursuant to the Ex-Parte Young[] Exception" (Doc. 37) be DENIED, and that Plaintiff's Motions for Sanctions against Defendant Johnson (Docs. 10, 18) be DENIED.

Dated at Burlington, in the District of Vermont, this 7th day of February 2023.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).